## BYRD v. HAMMETT *et al.*

No. 610.   Opinion Filed September 13, 1910.

Rehearing Denied December 13, 1910.

1. **APPEAL AND ERROR—Findings of Master—Conclusiveness.**
In chancery cases in the Indian Territory prior to the erection
of the state, the reference to the master being not by consent,
the finding of the master is persuasive only.

(a) The legal presumption where the evidence is conflict-
ing being that the findings of fact as found by the master and
approved by the chancellor are correct, his report will not be
set aside unless it appears with reasonable clearness that he
has fallen into a mistake of fact.

(b) Unless it is reasonably clear that the preponderance
of evidence is against such finding, the same will not be dis-
turbed on appeal.

2. **SAME.** Where the master in chancery reports the facts as
found by him and the same on motion (by defendants in error)
are approved by the court without any exceptions being saved
thereto by the complaining party (plaintiff in error), who there-
upon, over the objection of the defendants in error, requests
the court to make special findings of fact and conclusions of
law, which was done, judgment being rendered in favor of the
defendants in error, and there being evidence in the record to
sustain such findings of fact, and it not being reasonably clear
that there is a preponderance of evidence against such find-
ing, the judgment will not be disturbed here on appeal.

(Syllabus by the Court.)

*Error from District Court, Craig County; T. L. Brown, Judge*

Action by H. H. Byrd against C. H. Hammett and others.
From a judgment for defendants, plaintiff brings error. Af-
firmed.

On the 15th day of August, 1905, plaintiff in error, as plain-
tiff, commenced this action on the equity side of the docket in
the United States Court for the Northern District of the Indian
Territory, at Vinita, against the defendants in error, C. H. Ham-
mett and the Superior Oil and Gas Company, as defendants, seek-
ing an accounting. After the cause was at issue, same was re-

Vol. 27—41

ferred to A. M. Etchen, master in chancery, to take the testimony and report thereon. The said master, having heard the evidence, but not having made his report at the time of the erection of the state, on the 3rd day of December, 1907, it was stipulated by all parties that said master "shall make report and transmit the testimony in accordance with practice heretofore prevailing in the United States Court for the Northern District of the Indian Territory, report to be made by December 20, 1907, and evidence reported to be evidence in case." The master filed his report, the body of which is in *haec verba*:

"Albert M. Etchen, master in chancery of the United States Court for the Northern District of the Indian Territory, respectfully reports that, pursuant to the order of reference heretofore made and entered by the United States Court for the Northern District of the Indian Territory, he has examined the files and taken the evidence in the above-entitled cause, and finds therefrom as follows:

"1.   That the complaint herewith was filed on the 25th day of August, 1905. Service of summons was duly had upon the defendant, Charles H. Hammett, within the Northern District of the Indian Territory on the 21st day of August, 1905, and upon the defendant, Superior Oil and Gas Company, by service of summons upon Charles H. Hammett as treasurer of said Superior Oil and Gas Company, within the Northern District of the Indian Territory on the 21st day of August, 1905.

"2.   Thereafter, and on the 28th day of November, 1905, the defendant Superior Oil and Gas Company filed its separate answer herein.

"3.   That, on said 28th day of November, 1905, the defendant Charles H. Hammett filed his separate answer herein.

"4.   That, at the time of the commencement of this suit, said plaintiff resided in the Northern District of the Indian Territory and nearer to Vinita, Indian Territory, than any other place of holding court in said district.

"5.   That said defendant, Superior Oil and Gas Company, is a corporation, organized under the laws of the Indian Territory, with its main office in the Northern District of the Indian Territory.

"6.   That said Superior Oil and Gas Company was organized

with a capital stock of $200,000, of which capital stock F. C. Henderson subscribed forty per cent, C. H. Hammett thirty per cent, and Harry Raymond thirty per cent.

"7. That there was to be paid in, under date of May 31, 1904, the following sums of money upon said stock subscribed, namely:

"F. C. Henderson, .................................................$2,400.00
"C. H. Hammett, .................... . .................,.............. 1,800.00
"Harry Raymond, ........................'........ ................. 1,800.00

"8. That the remainder of said stock, namely, $194,000.00 was taken up by said F. C. Henderson, C. H. Hammett and Harry Raymond in the proportions, namely, F. C. Henderson, forty per cent. thereof; C. H. Hammett, thirty per cent. thereof, and Harry Raymond, thirty per cent. thereof, in consideration of the leases which said parties turned in to said Superior Oil and Gas Company at the time of its organization.

"9. That, in payment of said sums of money, in consideration of said stock subscription, F. C. Henderson paid by check $2,400.00; that Harry Raymond paid by check $1,800.00; that C. H. Hammett paid by note $800.00, and on account of expenses, $1,000.00. ·

"10. The master further finds that, in proportion to the amount of stock held in the Superior Oil and Gas Company by said Henderson, Hammett and Raymond, that said parties were assessed for drilling expenses as follows:

"C. H. Hammett.................................... . .................$4,727.70
"Harry Raymond......................................................... 4,727.70
"F. C. Henderson................... . ..............................—.... 6,303.60

"11. That said indebtedness was a matter of charge upon the books against the Superior Oil and Gas Company and in favor of the above-named parties, according to the respective shares of stock owned by them at the time the Superior Consolidated Oil Company took over the stock of the Superior Oil and Gas Company, with the exception of the qualifying shares, four each, held by F. C. Henderson, J. Wood Glass, C. H. Hammett, Harry Raymond and Harold Raymond.

"12. The master further finds that, in addition to the allowance made C. H. Hammett of a credit of $1,000.00 on his first stock subscription, that said C. H. Hammett was further allowed the sum of $1,600.00, which amount was credited to him upon the books of said company.

"13. The master further finds that, at the time the Superior Consolidated Oil Company took over the stock of the Superior Oil and Gas Company, that it assumed all indebtedness of the Superior Oil and Gas Company, in the sum of $15,749.00, which sum had theretofore been advanced by F. C. Henderson, C. H. Hammett and Harry Raymond, and that said sum was paid to said F. C. Henderson, C. H. Hammett and Harry Raymond by giving to them certain shares of stock in the Superior Consolidated Oil Company as follows:

"F. C. Henderson, 2,900 shares.

"Harry Raymond, 2,175 shares.

"C. H. Hammett, 2,175 shares.

"14. That, on the 19th day of May, 1904, said defendant, Charles H. Hammett, made and entered into a contract in writing with said plaintiff and associates, which is as follows:

" 'PRELIMINARY CONTRACT.

" 'U. S. of America,

" 'Indian Territory,

" 'Northern District.

" 'This contract and agreement between Edward Byrd, Henry Byrd and S. S. Stephens and C. H. Hammett *et al.*, made and entered into this, the 19th day of January, 1904.

" 'Whereas: All parties agree to work in securing leases and develop the same for profit. It is agreed that party of the first part shall devote their time to secure O. & G. leases; and the party of the second part shall pay the expenditures of securing the same in the name of C. H. Hammett, who shall represent both parties hereto.

" 'The party of the second part to remit money from time to time, ample to meet the necessary expenditures, and when said expenditures are not met, they shall have no interest therein, but the condition shall not affect leases where expenditures have already been made.

" 'It is further agreed that party of the first part and second part shall share equally and become equal owners of said lease, and from time to time they agree to form companies for the purpose of raising money and developing the property—and each shall be represented in said company.

" 'The expenditures to include $450—500 more or less—to

procure leases of James Mealin, of Charles Mealin, Frank Gourd —aggregating about 1,040 acres.

" 'Unless five hundred dollars is remitted by the 30th of January—and an additional sum of five hundred dollars to be sent by the 6th of February, 1904; the money to be deposited in the First National Bank in the town of Chelsea, I. T., the contract shall be null and void. The money to be placed to the credit of Edward Byrd.                " 'Edward Byrd,

" 'C. H. Hammett,

" 'Henry Byrd,

" 'Ed Byrd,

" 'S. S. Stephens,

"15. That said 'Preliminary Contract' was, by mutual consent of all parties thereto, terminated, and thereafter a new contract was made and entered into by and between said Edward Byrd and F. C. Rutan and associates, said contract being deposited in the First National Bank of Chelsea, of Chelsea, Indian Territory, an exact copy of said contract not being ascertainable from the files or the transcript of testimony.

"16. That thereafter, by mutual agreement of all parties thereto, said contract was terminated.

"17. That thereafter, and on the 23rd day of March, 1904, a new contract was made and entered into by and between Edward Byrd and associates, and F. C. Rutan and associates, which contract is, in words and figures, as follows, to wit:

" 'This Agreement, made and entered into the 23rd day of March, 1904, by and between Edward Byrd, Chelsea, Indian, Territory, U. S. A., on behalf of himself and his associates, party of the first part, and F. C. Rutan, Chicago, Illinois, on behalf of himself and his associates, party of the second part;

" 'Witnesseth: That party of the first part represents that he has secured, and can secure leases on lands allotted to Indians, or their assigns, in the Cherokee Nation, Indian Territory, U. S. A., the said leases to be secured and acknowledged on the forms as heretofore prepared, or are to be prepared, by the Department of the Interior at Washington, D. C., and are to cover no less than two thousand (2,000) acres, and more than two thousand five hundred (2,500) acres. Said leases shall cover not less than the number of two thousand (2,000) acres taken from citizens, and no more than........................ acres from minors.

" 'No leases shall be taken or included in the above where a question of title of the said lands exists, and where it will appear that the said allottee's lease will not be confirmed or approved by the Department of the Interior.

" 'Party of the second part, and his associates, have advanced the sum of $1,140.00 for the purpose of securing leases from the allottees of the Cherokee Nation, Indian Territory, and to defray the expenses for such services, and further agree to advance the additional sum of $1,000.00 for the securing of said leases and defraying all expenses incurred in connection therewith, and in consideration of the taking of the said leases in the name of the party of the second part, or his order; party of the second part agrees to undertake the work of getting said leases confirmed by the Department of the Interior at Washington, D. C., and to do the same as quickly as it is possible to obtain action thereon, and

" 'Further agrees to organize a company with a capital stock of $1,000,000.00, said company to be organized under the laws of the Territory of Arizona, and to deliver or cause to be delivered to the party of the first part, or his order, the number of 150,000 shares of the company, the said shares to be full paid and non-assessable by the assignment of all the leases so obtained, and said shares to be delivered to the party of the first part as soon as the said leases are confirmed and the same are permitted to be assigned to the said company; it being understood that the said company to be organized shall own and control all of the said leases for the benefit of the parties hereto, their associates and assigns.

" 'It is mutually understood by and between both parties hereto, that the party of the first part shall be delivered, in addition to the above 150,000 shares, the number of 3,000 shares to be paid James G. Mehlin, and

" 'It is further mutually agreed and understood that any additional shares that may be paid out in the obtaining of leases shall be deducted from the shares belonging to the party of the second part and his associates.

" 'Witness our hands and seals the above date written.

" 'Edward Byrd,
" 'Witnesses:     " 'F. C. Rutan.
" ' C. C. Young.
" 'H. L. Hollister.'

"That said contract is indorsed on the back thereof as follows:

" 'Received of C. H. Hammett *et al.* two hundred dollars and other valuable considerations in ꜰfull satisfaction of this contract and full payment of any and all claims against F. C. Rutan or C. H. Hammett, including any claims against Jas. Mehlin covering all matters pertaining to the oil leases in the Indian Territory to date.

" 'June 14th, 1904.                    " 'Edward Byrd.'

"18.   That said Edward Byrd and his associates did not procure or deliver to F. C. Rutan, and his associates, or to said defendant, C. H. Hammett, or Superior Oil and Gas Company, any leases for oil and gas mining purposes in the Indian Territory, that conformed to the requirements of the Department of the Interior, and as provided in said last-named contract; but that all leases procured by said Edward Byrd, and his associates, for F. C. Rutan, and his associates, were disapproved by said Department of the Interior.

"19.   That said defendant Superior Oil and Gas Company has never issued to said Edward Byrd, and his associates, including this plaintiff, any stock in said company.

"The master finds, as a matter of law, that all obligations arising between said Edward Byrd, and his associates, including plaintiff herein, and F. C. Rutan and his associates, including defendants herein, were fully satisfied, terminated and cancelled on the 14th day of June, 1904.

"Premises Considered, the master recommends that plaintiff take nothing by reason of his suit.

"The master further represents that he has consumed a great deal of time and has been to considerable expense in taking and transcribing the testimony and preparing his report in said cause, and asks the court to fix his compensation therefor at $200.00, and that said amount be ordered paid to the master."

On the 24th day of December, the plaintiff filed exception to said report, in *haec verba*:

"The plaintiff herein excepts to the findings of the master in this cause, and says that the evidence does not warrant any of the findings in any of the following paragraphs, namely, paragraphs 6, 7, 8, 9, 10, 11, 12, 13, 15, 16, 17 and 18, and he asks the court to disregard each and every one of the findings in said

paragraphs, and to make independent findings of fact and reduce the same to writing upon the trial of this cause.

"He further excepts to the conclusion of law of the master and asks the court to disregard the same and to make independent findings of law and find in favor of the plaintiff upon the trial of this cause from the evidence that has been submitted."

On December 31, 1907, the defendants duly moved that the findings of fact and the conclusions of law therein as reported by the master be confirmed by the court, and that judgment be rendered in favor of the defendants, and each of them, in accordance with the master's recommendations.

On Septembed 2, 1908, the report of the master was confirmed, and thereupon plaintiff's attorney, without excepting to such action of the court, asked that the findings of fact and conclusions by the court be made in writing, which request was granted.

On the 4th day of September, 1908, the court filed its findings of fact and conclusions of law, which were in *haec verba:*

### "FINDING No. I.

"The court finds that the plaintiff commenced this action on August 15th, 1905, by filing his complaint in the United States Court in the Indian Territory, Northern District, sitting at Vinita.

### "FINDING No. II.

"That the defendants, Superior Oil and Gas Company and Chas. H. Hammett, filed their separate answers to the plaintiff's petition on November 28th, 1905.

### "FINDING No. III.

"That, on the.............................day of.........................., 1907, this cause was referred by the United States District Court of the Northern District of the Indian Territory to A. M. Etchen, master in chancery.

### "FINDING No. IV.

"That, on the 3rd day of December, 1907, a stipulation was filed in this court, the district court of Craig county, Oklahoma, between W. H. Kornegay, attorney for plaintiff, and Riddle & Clapham, attorneys for defendants, in which stipulation the attorneys stipulated and agreed that A. M. Etchen, former master

in chancery, should make a report and transmit testimony in accordance with the practice heretofore prevailing in the United States Court for the Northern District of the Indian Territory; and that said A. M. Etchen, master in chancery, shall file his report by December 20th, 1907; and that the evidence so reported to be the evidence in this case.

"FINDING No. V.

"That, on December 21st, 1907, A. M. Etchen, master in chancery, filed his report and transmitted the evidence taken by him and filed the same in this court.

"FINDING No. VI.

"That the plaintiff's action is based upon the written contract set out in his complaint, denominated 'Preliminary Contract,' under date of January 19th, 1904.

"FINDING No. VII.

"That one of the provisions of the contract sued upon in the plaintiff's complaint is as follows: 'Unless $500.00 is remitted by the 30th day of January, and an additional sum of $500.00 be sent by the 6th day of February, 1904, the money to be deposited in the First National Bank in the town of Chelsea, I. T., the contract shall be null and void.'

"FINDING No. VIII.

"That no money was ever furnished or deposited under said contract, and the defendant, Chas. H. Hammett, by refusing to furnish or deposit any money entered said contract, exercising his rights thereunder and allowed the contract sued upon to become null and void and fully terminated on the 6th day of February, 1904.

"FINDING No. IX.

"That the plaintiff performed no services for either of the defendants before the date of the expiration of the contract sued upon, to wit: the 6th day of February, 1904.

"FINDING No. X.

"That on February 4th and March 23rd, 1904, Edward Byrd, the father of the plaintiff, Henry Byrd, entered into two different contracts with the defendant, Chas. H. Hammett, or his associates, and that a full and complete settlement between the parties thereto was made 'with the said Edward Byrd, on June 14, 1904, on which date the said Edward Byrd executed a receipt for

the sum of $200.00 covering all matters pertaining to the oil leases in the Indian Territory to that date; and that said receipt was given to the defendant, Chas. H. Hammett.'

"FINDING No. XI.

"That the plaintiff, Henry Byrd, was not a party to either of the contracts executed and entered into on the 4th day of February, and the 23rd day of March, 1904."

From said findings of fact, the court found the following conclusions of law, to wit:

"I.

"That the plaintiff, Henry Byrd, has no cause of action against the defendants, or either of them; and that the defendants should have and recover of the plaintiff judgment for their costs laid out and expended in this action.

"BE IT FURTHER REMEMBERED That the plaintiff then and there objected to finding No. 6 and his objection was overruled, and the plaintiff then and there excepted to the action of the court in overruling the same.

"BE IT FURTHER REMEMBERED That the plaintiff then and there objected to finding No. 7 and his objection was overruled, and the plaintiff then and there excepted to the action of the court in overruling the same.

"BE IT FURTHER REMEMBERED That the plaintiff then and there objected to finding No. 8 and his objection was overruled, and the plaintiff then and there excepted to the action of the court in overruling the same.

"BE IT FURTHER REMEMBERED That the plaintiff then and there objected to finding No. 9 and his objection was overruled, and the plaintiff then and there excepted to the action of the court in overruling the same.

"BE IT FURTHER REMEMBERED That the plaintiff then and there objected to finding No. 10 and his objection was overruled, and the plaintiff then and there excepted to the action of the court in overruling the same.

"BE IT FURTHER REMEMBERED That the plaintiff then and there objected to finding No. 11 and his objection was overruled, and the plaintiff then and there excepted to the action of the court in overruling the same.

"BE IT FURTHER REMEMBERED That the plaintiff then and

there objected to conclusion of law No. 1 and his objection was overruled, and the plaintiff then and there excepted to the action of the court in overruling the same."

Exceptions were saved from each of said conclusions of law. The plaintiff in due time moved for new trial on the following grounds:

(1)   Decision not sustained by evidence.

(2)   Errors of law occurring at trial and taking the evidence.

(3)   As to findings numbered 6, 7, 8, 9, 10, 11.

Such additional facts as may be essential will be hereinafter set out in the opinion.

*J. W. Swartz* and *W. H. Kornegay,* for plaintiff in error.

*Seymour Riddle* and *E. B. Lawson,* for defendants in error.

WILLIAMS, J.   It is insisted by counsel for the defendants in error that, as the plaintiff in error failed to save any exceptions to the order of the court confirming the report of the master, this court should not review the action of the trial judge in confirming such report.

In *Freeman v. Eldridge,* 26 Okla. 601, 110 Pac. 1057, this court said:

"This action was instituted in the district court of Oklahoma county, territory of Oklahoma, on the 4th day of April, 1905, and was pending, and undetermined, at the time of the admission of the state.   This section of the Schedule was construed by the United States Circuit Court of Appeals for the Eighth Circuit on May 11, 1909, in *St. L. & S. F. R. Co. v. Cundieff,* 171 Fed. 319, wherein it is said:

" 'Construing all of these provisions together, we are of opinion that they do not change, and were not intended to change, the method of procedure in cases pending in the courts of Indian Territory and of the territory of Oklahoma, but that the civil cases pending in the Indian Territory should, after statehood, continue under the law in force in the Indian Territory, and under that law no reply was required prior to statehood. We do not think that the provision of the Constitution (sec. 2, Schedule to the Const.) relied upon by the railroad company so changes the situation as to make a reply necessary.' "

In *Blakemore v. Johnson,* 24 Okla. 544, 103 Pac. 554, this court said:

"Upon this state of the evidence, the master made his findings. The legal presumption, where the evidence is conflicting, is that the findings of the master are correct, and his report will not be set aside, unless it appears with reasonable clearness that he has fallen into a mistake of fact. *Guarantee Gold Bond Loan & Savings Co. v. Edwards el al.,* 164 Fed. 809, 90 C. C. A. 585.

See, also, *Horn et ux. v. Gibson,* 24 Okla. 481, 103 Pac. 563.

In the case at bar, the trial court, over the objection of the defendants in error, proceeded, at the request of the plaintiff in error, to make special findings of fact and conclusions of law. The attorneys for the plaintiff in error evidently proceeded upon the theory that the procedure existing under the state government, as continued from the territory of Oklahoma, applied, and not that of the Indian Territory in force at the time of the erection of the state. For the purpose of disposing of this case, it is not essential to determine whether, as to pending cases in the Indian Territory at the time of the admission of the state, the Oklahoma Territory procedure, as continued in force by section 2 of the Schedule, applied, except where a substantial right was affected by change of procedure as existed in the Indian Territory; for, under the Oklahoma Territory practice, where a case is tried by a court without a jury and special findings of fact are made, based upon oral testimony, such findings are conclusive upon any disputed and doubtful questions of fact, and on appeal such finding will not be disturbed unless there is such a lack of evidence that it can be said as a matter of law that the finding is erroneous. *Seward v. Casler et al.,* 24 Okla. 275, 103 Pac. 740. The findings of fact by a referee have the same force and effect of a special verdict of a jury. *Lee v.Haizlip,* 22 Okla. 393; *Shannon v. Petherbridge et al.,* 17 Okla. 507.

Under the same practice, when a case has been referred to the referee and his findings of fact have been confirmd by the trial court, the same will not be disturbed on appeal when there is

evidence in the record reasonably tending to support the same *Seay v. Ellison et al.*, 25 Okla. 710, 107 Pac. 656.

If you determine this case under the Oklahoma rule, whether on the report of the referee or on the special findings as made by the trial court, the evidence as contained in the record sufficiently supports the same. If under the Indian Territory rule, it is immaterial whether it be under report as made by the master and confirmed by the court or the findings of fact as made by the trial court; for, in either event, the report of the master, as confirmed by the court, or the special findings as made by the court will not be set aside on appeal unless it is reasonably clear that the preponderance of the evidence is against the report or finding. We have carefully searched this record, and it does not so appear.

The judgment of the trial court is, accordingly, affirmed.

All the Justices concur.